Judge, may it please the court, this court should have remanded this case to state court first of all and fundamentally, because Intellisoft's state law claims do not depend on discrimination or any issue of federal law. The district court relied primarily on a supposed federal law inventorship dispute, but Intellisoft's claims implicate no such dispute. Intellisoft has to show that Mr. Bierman created the trade secrets. Any implications for the validity of long-expired patents is irrelevant to Intellisoft's claims. Do you agree that under 1554, if this counterclaim had been filed earlier in the case and weren't subject to a motion, that that would provide a ground for removal? No, in this circumstance. It would depend, first of all, on when it was filed, notwithstanding the fact that there had to be... Suppose it was timely filed, so there wasn't any need to file a motion for a leave to file. Right. It still would have had to satisfy the 30-day notice provision of 1446B. Okay, suppose it was filed within 30 days. Okay. In that case, there still wouldn't have been jurisdiction because there's no inventorship dispute in this case. Mr. Bierman and Intellisoft have not challenged... Wait, I'm sorry. I'm not understanding that. The counterclaim asks for resolution of an inventorship dispute. That would be a claim arising under the patent laws, under federal law. And why... 1554 seems to say that you can remove such a case to federal court. I don't want to be confusing. It was a declaratory judgment action. And for there to be a jurisdiction under 2201 for a declaratory judgment action, there has to be a concrete dispute that would rise to the level of an arbitrary dispute. No one is disputing the inventorship of these patents as a matter of federal law. Mr. Bierman and Intellisoft never made a claim that they should be the inventors, the named inventors, of the 713th family of patents. So there was no controversy. The district court would have... So there was no jurisdiction because there was a lack of controversy and that made it not removable? That's the... So it would have had to be remanded. They could have been... Facially, it might have been a basis for removal in the sense that facially there would be a counterclaim that would arise under, purport to arise under section 1338 because it was asking for a declaration of inventorship under 256. But that claim would not have supported jurisdiction under the circumstances here because there was no actual dispute about inventorship that would have supported declaratory judgment jurisdiction. Are you relying on the covenant not to sue as creating that? Because I don't see that the covenant not to sue has anything to do with removability at the time it was originally removed. So let me say that suppose that there had been an actual dispute. Suppose that all the other things that didn't happen here were satisfied and a counterclaim were filed. I think there's still a question about the proper interpretation of 1554 whether the part of filing the counterclaim in the state court can remove. But let's assume that they can. In that circumstance, then yes, that would be a basis for to go to federal court and say I'm removing because there is this counterclaim in the case and so it arises under the PAP Act. But in the circumstances here, it would have had to be that supported federal jurisdiction and obviously that was true. But why wouldn't it be supplemental? I mean, I guess we're talking about situations that don't exist here. But it seems to me that if there was proper removal and it was a state law claim over which there's supplemental jurisdiction, even if the federal law claim were dismissed or found to lack merit, that there would still be jurisdiction to continue to address the state law claims. The district court wouldn't have to do it because there are 1303 factors or whatever it is that can remand. But I'm not seeing the obligation to remand under those circumstances. Under 9th Circuit law, because that would be a dismissal for lack of subject matter jurisdiction, there would have to be a remand. The court would no longer have jurisdiction under the supplemental jurisdiction statute, only if there's a dismissal on the merits. That case is, and we did not cite it in the brief because the argument wasn't named, but the 9th Circuit case that we would cite for that, it also cites additional authority on that case. It's Scott v. Pasadena Unified School District. As I said, Your Honor, it's not cited in the papers. The site is 306 F 3rd 646 and the pen site is 664. And I believe that 9th Circuit law would govern that because it goes to supplemental jurisdiction statute and it's not particular to the patent laws. And what that case stands for is the proposition that under 1367, because there has to be original jurisdiction over a federal claim to support the supplemental jurisdiction, if there's a dismissal of a case for lack of subject matter jurisdiction, there is no discretion to keep the case. No? Yeah, but I'm not, okay, this is probably getting too far afield, but I think that if a case or controversy is eliminated in the course of the case after the removal of Supreme Court's decision in Rosado v. Wyman would suggest that it doesn't require a remand. If you take a look at that, it's 397 U.S. 397. But as you say, these issues haven't been argued. I mean, basically your central argument is that because there was a motion for leave to file and the complaint didn't become operative, that as a result of that, there was no removal jurisdiction because the federal plan wasn't part of the case yet. Right? And so what cases support that notion? We don't have any, as I understand it, dealing with 1454, but there's some cases that under other removal provisions that suggest that if there's a motion for leave to amend that's required, that the case would be considered to have been, quote, brought. Right? Correct, Your Honor. We cited Freeman v. Blue Ridge paper, which is a 6th Circuit case from 157.3.10.92. Both of those involve situations where in the first case it was a question of timeliness and the court held that the case was timely removed because the complaint did not, wasn't in the case until leave to file the amended complaint was granted. That's a statute which uses the word brought as opposed to the word asserted here. I checked the language of the statute, Your Honor. I think that would have been a removal simply under 1441, and 1441 refers to, yes, brought. Nevertheless, in both circumstances, it has to be in the case, and also the language of the claim has to be within the case to support removal. But as I say, in this circumstance, because upon that, the inventorship dispute here, if there was one, was evident from day one. The patent was attached to the complaint, and the assertion that Mr. Bierman had invented the technology that was disclosed in the patent was, again, present from day one. Acer repeatedly referred to that. How could that be relevant to the counterclaim? I don't understand that. I mean, your theory, which may be correct, is that the original case wasn't removable. So the fact that there was notice that there might be a counterclaim, how does that require that the counterclaim be brought earlier? Why doesn't the 30 days run from the filing of the counterclaim if it was filed? For two reasons, Your Honor. First of all, if there was, because if there was a basis to bring the head counterclaim, because there was a dispute over inventorship that was disclosed a long time before, therefore they had notice of the basis for removal. How could they remove before there was a filing of a counterclaim? They couldn't. Because, Your Honor, if the counterclaim was removable, if there was a basis for a counterclaim, then there was also a basis for removal disclosed. So in other words, if we go to the assumption that the counterclaim was properly filed, then there was a basis for removal. Before the filing of the counterclaim? They didn't only remove under 1454, they also removed under 1441, Your Honor. Yeah, but if we go with you and say there's no basis for removal under 1441, and the only basis for removal is under 1454, how can it be that they're barred because they didn't file earlier or didn't remove earlier? Well, the point is that obviously we don't think that 1454 provides a basis for removal because we don't think that the counterclaim was properly filed in court. The district court should have dismissed it. Yeah, I understand that argument, but that's not implicated in the question I was asking. I mean, you seem to be asserting an alternative basis other than the lack of effectiveness of the counterclaim. You're saying that somehow that the case became removable earlier, even though the counterclaim hadn't been filed. I don't understand that. Sure. What I'm saying, Your Honor, is that logically speaking, if there was a basis to file that counterclaim, if there was declaratory judgment of action based on the dispute over inventorship, assuming that's true, then we would have an alternative basis that they had long ago missed the time and waived. How could you remove something where there wasn't a basis for removal? The point is the only circumstance under which that counterclaim would provide a basis for removal, there would have had to be a prior basis for removal based on the claim that was filed. I don't mean to use a bazooka on a knack. We think that it's quite clear under this Court's precedence and under the Russo case from the 10th Circuit that there's no federal question raised in this case. And the 1454 did not provide a basis for removal because the claim was not in the case and because there was no jurisdiction over that counterclaim because there was no live dispute over federal law inventorship in the case. At the time of your covenant not to sue or at the time before that? As we argued in the district court and as we argued in this court, even when it was removed, there was no dispute over federal law inventorship that was substantial in the law. That was not the basis for any claim that his house office made. Well, my understanding is although you could argue that your claim is a trade secret misappropriation claim that doesn't necessarily rest on a theory that Mr. Bierman is the inventor of the patent, of Acer's patent. Nevertheless, the way it was litigated, it became clear that the argument for trade secret misappropriation was due at least under one theory, perhaps a primary theory, perhaps the sole theory that Mr. Bierman invented everything in the patent and so therefore deserves a certain amount of royalties or some kind of compensation for everything that Acer has earned off of that patent. No, that's not correct, John. The basis for the royalties was the sale of computers that incorporated the trade secrets. There was no effort to enforce a patent. Okay, perhaps not an effort to enforce the patent, but nevertheless to use the patent as a proxy to show why the products contained the trade secrets. It's because the patents contained the trade secrets and the products embody the patents. So therefore, I mean, I understand you're shaking your head, but at the same time there are things that I can read that sort of connect the dots in that particular way. I actually, I do think that if we look at Mr. Seidman's reports, that's not the way that they read, that's not what he was doing. But in any event, it would not matter because under any circumstances, if those are simply evidentiary, those are simply using the patents and the material in the patents as evidence to support a state law claim, it doesn't require the resolution of that federal law issue to decide a state law claim. But they attempt to distinguish those cases, the AT&T and Russo, as being cases where there wasn't complete overlap in the evidence, where they say this involves complete overlap. Does that make a difference? It wouldn't, Your Honor, in terms of what the evidence shows. But in any event, I don't know what they mean by complete overlap here. There was no effort to construe the claims of the patent. There was no infringement analysis per se in this case. What Mr. Seidman did was he used an examination of the computers to show how they function and use the trade secrets. He then used the basis to – he then used the specification and what was disclosed in the patents to draw connections between particular – between a set of computers that were sold and the ones that used Mr. Bierman's and Telesoft's trade secrets. What about your waiver theory? I know you're out of time, and I'm sure you'll get a little time on rebuttal. The waiver theory, it's built on probably a counter view of what's going on. The counter view being, aha, there was a patent issue running around in the case. It was an inventorship question. But nevertheless, ACER knew well ahead of time of those expert reports about inventorship being lurking in this case, and it chose to try to pursue litigating it in the state court. And so therefore, it long ago waived it before the time they tried to assert a cross-claim and then remove the case. We're not saying that they saw the expert reports before that time. They were undisclosed. Those were not – but yes, otherwise I agree with your honor entirely. ACER had repeatedly recognized in their pleadings and in their filings in the state court that this was a dispute over who invented the technology in the 713 family of hats. Pretty much in heck's order they said that. And so to the extent that that dispute over inventorship supports federal jurisdiction, they knew about it a long time ago, and they attempted to win in the state court. That waived their right to remove it, even under 1454, because they had made a choice to avail themselves of the state forum to try to win the case before they saw a federal forum. Okay. All right, we'll give you two minutes for rebuttal. Okay, Mr. Ball. Let's talk first about 1454 and this need to have a motion granted for Lief to file this counterclaim. In the blue brief at page 52, they cite this Freeman case and this Sullivan case, which suggests that removability doesn't happen until a motion for Lief to amend is granted. You don't cite those cases in your red brief. Why don't they tell us that there's no removability until a motion for Lief to file is granted? I guess there's a couple of reasons. One is that we believe that the plaintiff's authority regarding a confirmative amendment to a claim is an apposite. I think we need to focus on the fact primarily that this case involves a claim that a section 1454 counterclaim involves a claim which a state court would never have jurisdiction over. But I don't think you're addressing the question. You agree that the counterclaim wouldn't become operative until the motion was granted by the state court, right? I don't agree with that, Your Honor. You don't? No. In fact, section 1454C answers this exact question. It says, clarification of jurisdiction in certain cases. The court to which a civil action is removed under this section is not excluded from hearing and determining any claim in the civil action because the state court from which the civil action is removed did not have jurisdiction over that claim. Also, in section 1554A... Wait, wait, wait. I'm sorry. Do you agree that the complaint in the state court would not become operative until a motion for Lief to file was granted? I don't agree with that, Your Honor. Why is that true as a matter of state court? Well, there's a couple of reasons. Number one, the text of section 1454A requires... Your Honor, you may say it doesn't make a difference. That's not my question. My question is, under state law, in order to make the counterclaim operative, the motion for Lief to file had to be granted, right? I don't agree with that, Your Honor. Why is that not correct? Well, number one, the California law precedent says, in the Giacomo and the Andy Metal Products case, which are cited in our brief, 51 to 52, that simply submitting this claim to the court meant that it was filed as a matter of law. And moreover, there's nothing in the text of the statute that requires the state court to grant the motion for Lief to amend before the claim can be asserted under section 1554A. But just as a matter of state law, that case you're citing may say that the thing is filed, but it doesn't become operative until the motion for Lief has been granted, right? Well, I'm struggling with the idea, Your Honor, that a state court claim that arises under patent laws, which could never be brought in state court because the state court lacks jurisdiction over it, simply could never become operative. I mean, if you actually say a motion for Lief to amend needs to be granted by the state court in this case, then the interception is probably not possible. But you're discussing something other than what I'm discussing. You can move on to that argument. I'm just trying to start by saying it's a matter of state law. This complaint was not operative until the motion for Lief to file was granted. And I'm trying to—you seem to dispute that, and I'd like some authority. I would say that under the rules that apply to them, we need Lief to amend to file a counterclaim. That's right. Okay. And so why doesn't that bring this within the Freeman and Sullivan cases? Because of the way Section 1554 was written and what it says about the intent of Congress in this particular situation. Now, the American Invents Act, of course, was enacted to— as this court's recognized as Vermont president, was designed to make counterclaims removable and specifically counterclaims that arise under the Patent Act. And so as a result, it was meant to expand the jurisdiction of federal courts to the removable ability of jurisdiction over federal courts and at the same time to tighten the types of cases that a state court would hear. And so if you rely on a motion to amend a procedure in order to make sure that the case is removable, then you're essentially giving the state court judge total authority to determine the removability jurisdiction of the federal courts. And I believe that contravenes the text of the statute, number one, because Section 54A requires only an assertion of the claim. There's nothing in the text of Section 1554A, which is what we are talking about here, that requires Lief to amend to be granted by a state court judge. There's a difference between the word assertion and the word brought? Brought? What's the difference between assertion and brought? Because the Freeman and Sullivan cases, the statute said brought. Here the statute said assert. There's a difference between those two? We're in a bit of a quandary here since this is a relatively new statute. It hasn't bubbled up so much to the federal courts in this way, but it has to be that way, Your Honor, because otherwise Congress would be saying that, hey, in states where you have to have Lief to amend, you're giving some state court judges the authority to decide whether this case is going to be removable or not. Not only that, but the claim that it would never be subject to the jurisdiction of the state courts, which the state courts, which Congress in the AIA Act made completely specific. Well, you're certainly right that the fact that they file a patent claim in state court over which the state court would have no jurisdiction doesn't affect the removal, but that's not the argument we're dealing with here. The argument is here the thing didn't become operative until the motion for Lief to file was granted, and it never was. Well, again, I don't think that it matters that the claim never became operative in the state court because Section 54C specifically says the court to which a civil action is removed, i.e. the district court, under this section, is not precluded from hearing and determining any claim in the civil action because the state court from which the civil action is removed did not have jurisdiction over that claim. I submit to the court that that is because Congress recognized the difficulties that would occur in requiring a motion for Lief to amend an operative. The idea of an operative patent law claim in state court is just a contradiction in and of itself, and Section 1454C makes that clear, that Congress did not intend that it recognize that problem, and that's how it chose to deal with it. Judge Hamilton recognized that in Appendix 18, in that it makes no sense to allow state judges to act as gatekeepers as to which disputes may be adjudicated by federal courts under 1454 when the whole purpose of Section 1454 was to make sure that state courts didn't exercise jurisdiction over counterclaims arising under the patent laws. That was the whole point. So, it completely frustrates the intent of Congress. It also creates a problem with the uniform application of the removal statutes under Shamrock Oil. Our brief in 54 makes this clear, the removal statute, which is nationwide in its operation. I guess an alternative outcome would be that you would just file a D.J. action on inventorship in federal court. That would be an alternative strategy, but Section 54 was enacted as part of the AIA specifically to ensure that counterclaims arising in patent issues could remove the entire action for it to be decided by the district court. That was the part and parcel and purpose of these actions. Yeah, but they weren't addressing the question of whether you had to have granted a motion of relief to file first or not. Well, certainly, well, I mean, Congress, if you go back to the text of the statute, the removal statute seems to be strictly, there's no requirement that a state court judge has to grant a motion of relief to amend. The word operative is not in the complaint, I'm sorry, in the statute itself. What is in the statute itself is the idea that it doesn't matter whether the state court had jurisdiction over the claim or not. The court can still hear it upon removal. What about the waiver angle that you knew about the inventorship issue long before? You filed motion in limine, summary judgment motion, defining the case, you know, in view of what Intellisoft had been litigating, and so you were pursuing the inventorship issue in the state court litigation months before you ultimately sought removal. Well, Judge Chandler, I think you raised this point very well in your questions to Mr. Painter. The fact is that we had certain suspicions that where the expert reports ended up, that's where they were going, but they denied it all the way along. You can see when we filed a motion in limine, they had touched on the subject. This is what they said. Acer argues that plaintiff will seek to establish damages by showing that Acer products utilize the claims set forth in the 713 family of patents. That is incorrect. Plaintiff will show that Acer's products utilize plaintiff's trade secrets and confidential information. The claims in the 713 family of patents have no direct bearing on this independent damages analysis. That's at 1477, the appendix. In the order, the court says, the court bought, the state court bought that, and they said contrary to defendant's characterization, plaintiff is not content in a mere showing that defendant's products use the technology described in the defendant's own patents will suffice to establish trade secret infringement. But when we got the expert reports, the case fundamentally changed. Mr. Rapp, the court took the position that Mr. Bierman should have been made an inventor under the federal inventorship statute. That was the first time that claim had been raised. And Mr. Zeidman, in his supplemental report and claim charts, showed how claim one of the patent read on to the ACPI products in Acer's work. So at that point, we said, okay, well, there's definitely a federal issue here now. Let's remove. Now, as far as the inventorship issue goes, this court's precedent in the American Telephone and Telegraph case is relevant to this. The court made clear that the word invention in general, and this was in the context of whether a substantial patent issue was raised. I'm not understanding quite your response to this. I understand your waiver theory with respect to removal under 1441. But what does waiver have to do with 1454? Okay, I'll get into that, Your Honor. So my position is that our counterclaim was a direct response to Mr. Rapp's assertion for the first time that he would testify that Mr. Bierman was an inventor under 35 U.S.C. 256 under federal patent law. And that was the first time that issue had ever been raised. At that point, we determined that a counterclaim to D.J. was necessary. And the reason why that issue wasn't weighed before and why it's so important that that issue was brought up at the expert reports goes back to this court's opinion in American Telegram and Telephone Company where the court made clear that just because you use the word invention in the context with a dispute that involves a patent doesn't mean much. It doesn't necessarily create a substantial issue of patent law. So the word invention has patent and general law meanings. So Mr. Bierman says, I'm the inventor of the 713 patent. If nobody's taking the position that he's an inventor under federal law, well, that could be a state law issue still under American Telegram and Telegraph Company and wouldn't clearly trigger our right to remove. And I would point out that up until the motion for summary judgment, they argued, they were still contending that Mr. Bierman's trade secrets could have been disclosed in other parts of patents other than the claims, like the specification, et cetera. And if you want to take a look at that, that's an oral argument at appendix 243 to 247. So, I mean, you know, and then we contend with the issues of the rest of the cases and that there's not always a total overlap. But under section 54, we can argue our counterclaim is finally because they've squarely raised the issue with Mr. Rappaport's opinion under federal membership law that was then confirmed in his deposition testimony. Okay. Anything more? If only there's anything else that the court would like to discuss. I don't think so. Thank you. Okay. Thank you, Your Honor. Mr. Panner, you've got a couple minutes. Thank you, Your Honor. Briefly, with regard to the question of the possibility of filing a clerical rejection action, which Your Honor brought up as an alternative to trying to get that into the state case, that's, of course, something that this court recognizes as a possibility. In the Preston v. Nagle case, 857 after 1382, if there was, in fact, a controversy over federal law and membership at that point, that's something that could have been done. They would not have been denied a federal quorum for their federal plan. But the point is here that there – and, you know, I do think it's worth emphasizing that the removal was based on the Supreme Court inventorship. And in as long – you know, in their summary judgment motion in state court, Acer said the party's primary difference goes to who is responsible for the invention of a certain power management system comprised primarily of party work component, which was ultimately embodied in U.S. Patent 713. That's exactly what happened in Rousseau as well. There was a dispute over who invented technology that wound up in the patent, and the claim was for royalties based on the defendant's sale of medical devices that practiced that patent. The argument was made this is something that therefore raises – you know, arises under the patent law. And the Tenth Circuit said, no, that's not correct, that the patent can be evidence of a trade secret misappropriation without that raising an issue of federal law. And unless the court has questions. Okay. Thank you, Mr. Penner. I thank both counsel and the case system. And that concludes our session for this morning. All rise.